UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON MCLAUGHLIN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>TESLA, INC., et al.,<br><br>    Defendants. | Case No. 22-cv-07849-SVK<br><br>**ORDER RESOLVING CHOICE-OF-LAW ISSUES**<br><br>Re: Dkt. Nos. 80-81 |

In connection with trial preparation, Defendant Tesla, Inc. ("Tesla") requests that the Court apply Virginia law to exclude the testimony of Plaintiffs' expert Dr. Timothy Fratto and otherwise hold that Virginia law will govern the substantive issues in this action. *See* Dkts. 80-81 (the "Motions"). The Parties appeared before the Court for a hearing on the Motions on September 5, 2024. All necessary parties—Plaintiffs and Tesla—have consented to the jurisdiction of a magistrate judge.[1] *See* Dkts. 6-7. After considering the Parties' briefing, relevant law and the record in this action, and after hearing oral argument, the Court **DENIES** Tesla's request to exclude Dr. Fratto's testimony on the basis of Virginia law and **GRANTS IN PART** and **DENIES IN PART** Tesla's request to apply Virginia law to other issues in this action.[2] The Court's reasoning is set forth below.

---

[1] Plaintiffs also sued 100 Doe defendants. *See* Dkt. 1-2 ¶ 13. These Doe defendants are not "parties" for purposes of assessing whether there is complete consent to magistrate-judge jurisdiction. *See Williams v. King*, 875 F.3d 500, 502-505 (9th Cir. 2017) (magistrate-judge jurisdiction vests only after all named parties, whether served or unserved, consent); *RingCentral, Inc. v. Nextiva, Inc.*, No. 19-cv-02626-NC, 2020 WL 978667, at *1 n.1 (N.D. Cal. Feb. 28, 2020) (*Williams* does not require consent of unnamed Doe defendants).

[2] The Court has issued a separate order concerning the other issues presented in the Motions concerning Dr. Fratto. *See* Dkt. 101.

## I. BACKGROUND

The Parties do not dispute the following facts. Plaintiffs Aaron McLaughlin and Tara Clark, husband and wife, reside in Virginia. In 2018, they purchased a car from Tesla in Virginia. Tesla is incorporated in Delaware and headquartered in Texas but designed and manufactured the car in question in California.[3] In October 2020, while Plaintiff McLaughlin was driving on the highway in Virginia, he was involved in a car accident. The Parties dispute the cause of the accident; Plaintiffs blame Tesla's allegedly defective design and manufacture of the car, and Tesla blames Plaintiff McLaughlin's allegedly negligent operation of the car.

Two years after the accident, Plaintiffs commenced this action to recover for Plaintiff McLaughlin's injuries under theories of strict liability and negligence and to recover for Plaintiff Clark's alleged loss of consortium. *See* Dkt. 1-2 ¶¶ 34-84. The Parties dispute whether Virginia law or California law governs these claims.

## II. LEGAL STANDARD

Where a federal court exercises subject-matter jurisdiction on the basis of diversity jurisdiction, it must apply the choice-of-law rules of the forum state. *See Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). Thus, the Court must apply California's three-part governmental-interest test:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

---

[3] At the September 5 hearing, Plaintiffs asserted that Tesla was headquartered in California at the time it manufactured and designed the car in question. Even if true, that fact would not alter the Court's analysis in this Order.

*Chen v. L.A. Truck Ctrs., LLC*, 7 Cal. 5th 862, 867-68 (2019) (quotation marks and citations omitted). Applying the test requires a fact-specific analysis. *See In re iPhone 4S Consumer Litig.*, No. 12-cv-01127-CW, 2013 WL 3829653, at *9 (N.D. Cal. July 23, 2013); *see, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (applying California choice-of-law analysis based on "facts and circumstances of th[e] case"), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022). In that vein, a court does not simply blanket an action with a particular state's laws but rather independently applies the test to each issue. *See Wash. Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 920 (2001); *Foster v. United Airlines, Inc.*, No. 19-cv-02530-JD, 2023 WL 3102570, at *2 & n.2 (N.D. Cal. Apr. 25, 2023).

### III. DISCUSSION

Tesla identifies four discrete principles of Virginia law that it wants the Court to apply:

- Only medical doctors can opine as to the cause of a human injury, as opposed to California's less-restrictive requirements;
- Products liability is evaluated under a negligence regime, as opposed to California's strict-liability regime;
- The availability of a contributory-negligence defense, as opposed to California's comparative-fault scheme; and
- A $350,000 cap on punitive damages, as opposed to California's lack of a fixed-dollar cap.

As discussed below, the first principle of Virginia law does not apply to this action, but the remaining three principles do.

### A. Virginia's Limitation On Opining About Human Injuries Does Not Apply

Plaintiffs' expert Dr. Fratto opines that the car crash in question caused Plaintiff McLaughlin to suffer certain injuries. Dr. Fratto is a neuropsychologist, not a medical doctor, and under Virginia law, "only a medical doctor is qualified to give expert testimony about the cause of human physical injury." *Hollingsworth v. Norfolk S. Ry. Co.*, 279 Va. 360, 364 (2010) (citations omitted). Accordingly, Tesla argues, Dr. Fratto may not opine as to the cause of Plaintiff McLaughlin's injuries. Plaintiffs counter that this principle of Virginia law does not apply to this

3

action because it concerns admissibility, and in federal court, Federal Rule of Evidence 702, and not state law, governs the admissibility of expert testimony. Plaintiffs' position is incorrect because they conflate competency under Rule 601 with admissibility under Rule 702.

Under Rule 601, where state law governs a claim or defense in a civil action, state law also governs a "witness's competency regarding [that] claim or defense." *See* Fed. R. Evid. 601. Competency, to be sure, remains difficult to distinguish from admissibility, as both concepts encompass the qualifications of an expert to offer an opinion. *See* 27 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6003 (2d ed. June 2024 update) ("While the distinction between competence and admissibility is basic to Rule 601, that distinction has not always been clear in the law of evidence. . . . [F]ederal courts still invoke the word competency when discussing admissibility . . . ." (citation omitted)). Nevertheless, the Ninth Circuit instructs that the two concepts are different: "A witness may be competent but unable to testify as to anything [admissible]." *Liebsack v. United States*, 731 F.3d 850, 857 (9th Cir. 2013) (citation omitted). Thus, rather than usurping admissibility standards under Rule 702, Rule 601 "leave[s] room for application of Rule 702 after state competency standards and Rule 601 are satisfied." *See id.* The Virginia rule in question constitutes such a state competency standard. *See, e.g.*, *id.* at 854-57 (treating Alaska statute setting forth qualifications for experts who may opine on standard of care in professional-negligence actions as setting forth competency requirement).

The question remains whether Virginia law or California law governs Dr. Fratto's competency to opine as to the cause of Plaintiff McLaughlin's injuries, and the Court resolves that question through analysis under California's choice-of-law principles. *See Est. of Aguirre ex rel. Aguirre v. Koruga*, 42 F. App'x 73, 75 (9th Cir. 2002). Under California's choice-of-law principles, the Court must apply governmental-interest analysis to determine which state's <u>substantive</u> law applies; procedural issues, however, remain subject to the law of the forum. *See Arno v. Club Med Boutique Inc.*, 134 F.3d 1424, 1425-26 (9th Cir. 1998); *Saw v. Avago Techs. Ltd.*, 51 Cal. App. 5th 1102, 1108 (1st Dist. Div. 1 2020); *Airs Aromatics, LLC v. CBL Data Recovery Techs. Inc.*, 50 Cal. App. 5th 1009, 1016 (4th Dist. Div 1 2020). "As defined in the case law, the terms 'practice' and 'procedure' include the mode of procedure by which a legal right is

4

enforced as distinguished from the substantive law which gives or declares the right." *Shisler v. Sanfer Sports Cars, Inc.*, 167 Cal. App. 4th 1, 10 (6th Dist. 2008) (citation omitted); *accord City of Huntington Beach v. Becerra*, 44 Cal. App. 5th 243, 268 (4th Dist. Div. 3 2020). Under this framework, evaluating the competency of an expert constitutes a procedural issue under California law because the expert's competency does not concern the giving or declaring of a right but instead concerns the method through which rights are enforced. *See also Pfingsten v. Westenhaver*, 39 Cal. 2d 12, 19 (1952) ("The law of the forum controls the rules of evidence . . . ." (citations omitted)); *accord Spector v. Glob. Aerospace Underwriting Managers, Ltd.*, No. B271085, 2017 WL 2806881, at *4 n.6 (Cal. Ct. App. 2d Dist. Div. 1 June 29, 2017); *see, e.g.*, *Prod. Mktg. Concepts, Inc. v. Streamline Shippers Ass'n, Inc.*, No. B158688, 2003 WL 1788796, at *4 (Cal. Ct. App. 2d Dist. Div. 8 Apr. 4, 2003) ("[I]t is irrelevant whether Virginia law permits a party to use non-record or extrinsic evidence to prove an issue was adjudicated in a prior proceeding. Evidentiary questions are controlled by the law of the forum. California law therefore governs the question whether evidence outside the record of the underlying proceeding may be used to prove an issue was adjudicated." (citation and footnote omitted)).

As Tesla correctly noted at the September 5 hearing, in *Liebsack*, the Ninth Circuit expressly acknowledged the "elusive" distinction between substance and procedure in the context of competency rules and cited with approval the Sixth Circuit's observation that "[s]tate witness competency rules are often intimately intertwined with a state substantive rule." *See Liebsack*, 731 F.3d at 855-56; *see also Legg v. Chopra*, 286 F.3d 286, 290 (6th Cir. 2002). But the Ninth Circuit did so in evaluating whether federal procedural law or state substantive law governed a witness's competency. *See id.* at 854-57. Here, state law governs competency, and so the Court must apply the substance-procedure distinction recognized by California's choice-of-law principles. Tesla argued at the September 5 hearing that this distinction does not clearly apply to competency rules as rules of evidence, based on the following language in *Chavez v. Keat*, 34 Cal. App. 4th 1406 (4th Dist. Div. 2 1995): "California's Rule that a Punitive Damage Award Must Be Supported by Evidence of the Defendant's Financial Condition Is Substantive Law." *Id.* at 1413 (emphasis omitted). But the rule at issue in *Chavez* concerned an evidentiary burden (as opposed

5

to a rule of evidence) imposed in connection with assessing punitive damages, rendering such a production of evidence "essential to the claim for relief," and thereby substantive. *See id.* at 1415-16. Competency, in contrast, does not constitute an evidentiary burden that a party must satisfy in connection with seeking relief and instead concerns "the machinery for carrying on the suit"—it is procedural. *Id.* at 1415.

Thus, California law governs the competency of Dr. Fratto to opine on the cause of Plaintiff McLaughlin's injury.

### B. Virginia Law Governs The Remaining Three Issues In Question

As discussed below, analysis under California's choice-of-law test yields Virginia law as the governing law for the remaining issues raised by Tesla.

#### 1. Step One:  California Law And Virginia Law Conflict

For all three issues raised by Tesla, the laws of California and Virginia conflict:

- In California, courts may impose strict liability for manufacturing and design defects where a plaintiff uses the product "in a reasonably foreseeable way." *See Kim v. Toyota Motor Corp.*, 6 Cal. 5th 21, 30 (2018) (citation omitted).  "Virginia[, however,] has not adopted a strict liability regime for products liability." *Evans v. Nacco Materials Handling Grp., Inc.*, 295 Va. 235, 246 (2018).  Instead, a plaintiff must proceed under theories of warranty or negligence. *See Jeld-Wen, Inc. v. Gamble ex rel. Gamble*, 256 Va. 144, 148 (1998).

- California has abrogated the contributory-negligence defense in favor of a comparative-fault scheme for apportioning damages. *See Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 828-29 (1975).  Virginia, however, bars liability where a plaintiff's injury stems from their contributory negligence. *See Litchford v. Hancock*, 232 Va. 496, 499 (1987).

- Courts may generally award punitive damages without any fixed cap under California law. *See Lane v. Hughes Aircraft Co.*, 22 Cal. 4th 405, 419-20 (2000) (Mosk, J., concurring). Under Virginia law, however, punitive damages may not exceed $350,000. *See Sines v.*

*Hill*, 106 F.4th 341, 348 (4th Cir. 2024).[4]

The Court must therefore proceed to Step Two.

### 2. Step Two: A True Conflict Exists

At Step Two of the analysis, the Court evaluates whether "a true conflict exist[s] such that 'each of the states involved has a legitimate but conflicting interest in applying its own law[.]'" *See In re Miller*, 853 F.3d 508, 516 (9th Cir. 2017) (citation omitted). "If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied." *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citation omitted). "[E]very state has an interest in having its law applied to its resident claimants." *Mazza*, 666 F.3d at 591-92 (citation omitted). Further, "a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders[.]" *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97-98 (2010) (citations omitted).

Based on these principles, the Court concludes that both Virginia and California maintain an interest in applying their respective laws to this action; Plaintiffs are Virginia residents and bought the car in Virginia, the car accident occurred in Virginia and the allegedly defective design and manufacture of the car that caused the accident occurred in California. *See, e.g.*, *Reno Flying Servs., Inc. v. Piper Aircraft, Inc.*, No. 13-cv-04346-NC, 2014 WL 6629531, at *4-5 (N.D. Cal. Nov. 21, 2014) (state where injury occurred and state where manufacture occurred both maintain interest in application of their laws); *Flack v. Nutribullet, LLC*, No. 18-cv-05829-DDP, 2019 WL 1596652, at *3 (C.D. Cal. Apr. 12, 2019) (same).

Tesla argues that California maintains only a "hypothetical" interest in the application of its laws because Plaintiffs are Virginia residents, and the accident occurred in Virginia, thus giving the facts of this case a particularly Virginian flavor. *See* Dkt. 80 at 5. But Tesla designed and manufactured the car in question in California, and "California has a strong interest in regulating the conduct of manufacturers who produce products in th[e] state which cause injury to persons in

---

[4] Plaintiffs do not dispute that the laws of California and Virginia conflict on these three issues. *See* Dkt. 84 at 2.

other jurisdictions. This interest . . . is to deter negligent conduct; the likelihood of a substantial recovery against such a manufacturer strengthens the deterrent effect." *Stangvik v. Shiley*, 54 Cal. 3d 744, 759 (1991) (citations omitted).

Tesla's cited authorities in opposition to the proposition that California maintains an interest in regulating manufacturing that occurs within its borders are inapposite (*see* Dkt. 80 at 6):

- In *Howe v. Diversified Builders, Inc.*, 262 Cal. App. 2d 741 (2d Dist. Div. 2 1968), the sole California connection was the state of incorporation of the defendants. *See id.* at 746. Here, in contrast, California's interest does not stem from the residence of any party but <u>from conduct that occurred in the state</u> (*i.e.*, the manufacture and design of the car).
- In *Nelson v. F. Hoffmann-La Roche, Inc.*, 642 F. Supp. 3d 1115 (N.D. Cal. 2022), the manufacturers of the product in question: (1) sold the product to a non-party with offices in California; and (2) were headquartered in California at the time Plaintiff used the product. *See id.* at 1135. Again, however, California's interest in this action does not stem from such attenuated connections but rather <u>from conduct that occurred in the state</u>.

On the other side of the Step Two debate, Plaintiffs argue that Virginia has no genuine interest in this action because application of Virginia law here would inure to the benefit of a non-Virginia resident were it applied (*i.e.*, Tesla), and Virginia maintains no interest in assisting non-residents. *See* Dkt. 84 at 7. Plaintiffs cite to the seminal decisions of *Reich v. Purcell*, 67 Cal. 2d 551 (1967), and *Hurtado v. Superior Court*, 11 Cal. 3d 574 (1974), in support of their position. The Court agrees that *Reich* and *Hurtado* support a contention that Virginia maintains no interest in the application of its laws where doing so would benefit Tesla (a non-Virginia resident) to the detriment of Plaintiffs (Virginia residents). But those decisions do not foreclose the possibility of Virginia maintaining an interest here. In both cases, the Supreme Court of California recognized that states maintain an interest in regulating conduct that occurs within their borders. *See Reich*, 67 Cal. 2d at 556; *Hurtado*, 11 Cal. 3d at 583-84. That is consistent with the purpose of Virginia's contributory-negligence regime which aims to regulate the conduct of potential plaintiffs. *See Sawyer v. Comerci*, 264 Va. 68, 74 (2002) ("The essence of contributory negligence is carelessness." (citations omitted)); *Hill v. City of Richmond*, 189 Va. 576, 584 (1949) ("The

8

plaintiff should not recover when his own fault contributed to his hurt.").

The Supreme Court of California has also recognized that states maintain an interest in the application of their laws that benefit foreign businesses who engage in commercial activity within those states:

> When a state adopts a rule of law limiting liability for commercial activity conducted within the state in order to provide what the state perceives is fair treatment to, and an appropriate incentive for, business enterprises, we believe that the state ordinarily has an interest in having that policy of limited liability applied to out-of-state companies that conduct business in the state, as well as to businesses incorporated or headquartered within the state. <u>A state has a legitimate interest in attracting out-of-state companies to do business within the state</u>, both to obtain tax and other revenue that such businesses may generate for the state, and to advance the opportunity of state residents to obtain employment and the products and services offered by out-of-state companies.

*McCann*, 48 Cal. 4th at 91-92 (emphasis added). This business-friendly reasoning applies to Virginia's negligence regime for products liability and cap on punitive damages. *See Quisenberry v. Huntington Ingalls Inc.*, 296 Va. 233, 247 (2018) (regarding negligence) ("We have said, in the context of products liability, that '[t]he purpose of making the finding of a legal duty as a prerequisite to a finding of negligence . . . is to avoid the extension of liability for every conceivably foreseeable accident, without regard to common sense or good policy.'" (citation omitted)); *Besser Co. v. Hansen*, 243 Va. 267, 276 (1992) (regarding negligence) ("[A] manufacturer is not required to supply an accident-proof product." (citation omitted)); *Wackenhut Applied Techs. Ctr., Inc. v. Sygnetron Prot. Sys., Inc.*, 979 F.2d 980, 985 (4th Cir. 1992) (regarding cap on punitive damages) ("[T]he government's purpose was to limit the jury's discretion in the awarding of punitive damages. Its goal was to limit juries' punitive damages awards to those that punish and deter <u>and to prevent awards that burden the state's economy</u>." (emphasis added) (citations omitted)). Plaintiffs countered at the September 5 hearing that no such interest applies here because Tesla did not provide any evidence that Virginia's business-friendly laws actually incentivized Tesla to conduct business in the state. But California's choice-of-law test does not require the production of any such evidence, the Court is not aware of any

9

authority holding otherwise and Plaintiffs offered no authority in support of that position.

Thus, both California and Virginia maintain an interest in the application of their laws to the three issues raised by Tesla that are consistent with state interests recognized by the Supreme Court of California. Accordingly, the Court must proceed to Step Three.

### 3. Step Three: Comparative Impairment Weighs In Favor Of Applying Virginia Law

At Step Three of the analysis, the Court must "apply[] the law of the state whose interest would be the more impaired if its law were not applied." *See Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 124 (2006) (citation omitted). The "task is not to determine [which state's] rule is the better or worthier rule, but rather to decide—in light of the legal question at issue and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." *McCann*, 48 Cal. 4th at 97. With these principles in mind, the Court concludes that Virginia's interests would be more impaired were Virginia law not applied than would be California's interests were California law not applied.

#### a. Strict Liability v. Negligence

"California's interest in ensuring that manufacturers bear the financial burden of defective products is . . . primarily local in character, to protect California residents and persons who are injured in California from having to bear the financial costs of injuries caused by defective products." *Chen v. L.A. Truck Ctrs., LLC*, 42 Cal. App. 5th 488, 502 (2d Dist. Div 8 2019). But here, no California resident was injured, and no injury occurred in California. So California's interest would not be greatly impaired by the application of Virginia law. *See, e.g.*, *Kleiner v. Spinal Kinetics, Inc.*, No. 15-cv-02179-EJD, 2016 WL 1565544, at *1, *7 (N.D. Cal. Apr. 19, 2016) (where injuries occurred outside of California to non-California residents, California's interests minimally impaired by application of foreign law even though "the product at issue was designed, manufactured, and entered the stream of commerce from" California); *see also Mazza*, 666 F.3d at 594 ("California's interest in applying its law to residents of foreign states is attenuated." (citation omitted)).

As for Virginia, as discussed above, it maintains a strong interest in fostering a business-friendly environment for out-of-state companies doing business in the state. Applying California law here would greatly impair that interest by imposing strict liability on an out-of-state company. *See, e.g.*, *Chen*, 42 Cal. App. 5th at 502. Thus, comparative impairment weighs in favor of applying Virginia's negligence regime over California strict-liability regime.

### b. Comparative Fault v. Contributory Negligence

With respect to comparative fault, California's interest stems from a policy of equitably apportioning liability and damages in express contrast to the inequitable outcomes of a contributory-negligence regime. *See Li*, 13 Cal. 3d at 810-811, 828-29. At first blush, therefore, applying Virginia's contributory-negligence regime would seemingly greatly impair California's interest. But "California decisions have adopted a restrained view of the scope or reach of California law with regard to the imposition of liability for conduct that occurs in another jurisdiction and that would not subject the defendant to liability under the law of the other jurisdiction." *McCann*, 48 Cal. 4th at 99 (emphasis added). Here, such a "restrained view" counsels against applying California law, as the car accident occurred in Virginia, and application of Virginia's contributory-negligence rule could lead to no imposition of liability on Tesla.

As for Virginia's contributory-negligence defense, as discussed above, the policy underlying that rule concerns regulating the conduct of potential plaintiffs. Applying California's comparative-fault scheme could regulate Plaintiff McLaughlin's conduct, as it may result in a reduced damages award to him based on his negligence. That means the impairment to Virginia's interest stemming from application of California law could potentially be limited.[5]

Regardless, the Court holds that this impairment to Virginia's interest would still be greater than the impairment to California's interest stemming from application of Virginia law. Tesla's design and manufacture of the car in question in California constitutes the sole California

---

[5] For example, were Plaintiff ultimately found to be 99 percent at fault for the accident, there would be a minimal difference between his damages award under California law and his damages award under Virginia law.

11

connection in this case. *But see* Note 3, *supra*. But California's interest in regulating that conduct, at least as implicated in this case, is limited because the injury occurred outside of California to a non-California resident.[6] *See Chen*, 42 Cal. App. 5th at 502. Virginia, in contrast, maintains a strong interest in regulating the conduct of its resident that occurred within its borders, and its law should therefore govern. *See, e.g.*, *Lemmon v. Snap, Inc.*, No. 19-cv-04504-MWF, 2022 WL 1407936, at *3-5 (C.D. Cal. Mar. 31, 2022) (where car accident involving Wisconsin residents occurred in Wisconsin and allegedly tortious design occurred in California by a California company, applying contributory-negligence rule of Wisconsin over comparative-fault rule of California at Step Three in light of Wisconsin's "specific compelling interest in applying Wisconsin law to regulate the conduct of persons on its roadways").

*c.     No Fixed Cap On Punitive Damages v. $350,000 Cap*

In California, "[t]he purpose of punitive damages is to punish wrongdoers and thereby deter the commission of wrongful acts." *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 928 n.13 (1978) (citations omitted). Applying Virginia's cap on punitive damages would not greatly impair this policy because doing so would still leave open the possibility of assessing punitive damages against Tesla. However, as noted above, Virginia caps punitive damages to, in part, prevent negative consequences to its economy. A large imposition of punitive damages against Tesla under California law might burden Virginia's economy because it may disincentivize entry of foreign businesses into Virginia. Applying California law could therefore strike at the heart of Virginia's interest in capping punitive damages. Virginia law, therefore, should govern. *Cf. Lakes v. Bath & Body Works, LLC*, No 16-cv-02989-MCE, 2019 WL 3731734, at *1-4 (E.D. Cal. Aug. 8, 2019) (applying California law regarding punitive damages where, *inter alia*, the plaintiff

---

[6] In connection with the Step Three analysis concerning the contributory-negligence defense, Plaintiffs argued for the first time at the September 5 hearing that California maintains an ongoing interest in regulating Tesla's conduct. The Court need not address arguments raised for the first time at a hearing and declines to do so here. *See, e.g.*, *Silva v. City of Santa Clara*, No. 23-cv-02269-SVK, 2024 WL 1244483, at *4 n.4 (N.D. Cal. Mar. 22, 2024). In any event, any such ongoing interest would implicate Step Two only (*i.e.*, whether California maintains an interest in application of its comparative-fault scheme) and not Step Three (*i.e.*, the extent to which application of the Virginia rule would impair California's interest).

12

regularly traveled between California and jurisdiction where injury occurred, ordered the item in question while in California and sought treatment for injury in California, even though the item was designed and manufactured in Ohio by a company headquartered in Ohio); *Hill v. Novartis v. Pharm. Corp.*, No. 06-cv-00939-AWI, 2012 WL 967577, at *5-11 (E.D. Cal. Mar. 21, 2012) (applying California law regarding punitive damages where, *inter alia*, the plaintiff was a California resident and was injured in California, and the defendant that manufactures the product in question was a resident of New Jersey and made key corporate decisions in New Jersey).

                d.      *The Court Rejects Plaintiffs' Arguments Regarding Step Three*

Plaintiff argues that comparative impairment weighs in favor of applying California law because applying Virginia law "would fundamentally impair California's ability to regulate Tesla's conduct" that occurs in California. *See* Dkt. 84 at 9. That argument is both hyperbole and inaccurate—California law would likely still apply to Tesla's conduct in other situations (*e.g.*, where an accident involving a car designed and manufactured by Tesla occurs in California or injures California residents). But where, as here, a product designed and manufactured in California allegedly injures a non-California resident outside of California, California's interest in regulating the manufacturer is limited.

Plaintiffs' cited authorities do not change this conclusion (*see id.* at 8-9):

- In *Stangvik*, the Supreme Court of California acknowledged that California has a strong interest in regulating manufacturers, and, as explained above, this Court respects that interest. But the court in *Stangvik* did not conduct a choice-of-law analysis and did not discuss how the state's interest in regulating manufacturers plays out at Step Three. Nothing in that decision suggests that the interest reigns supreme, even where an accident occurs outside of California and injures non-California residents.
- In *In re Paris Air Crash of March 3, 1974*, 399 F. Supp. 732 (C.D. Cal. 1975), the court explained that, "if the wrong is in defective design or manufacture, it occurred at the time and in the place of design and manufacture[, and so] the place where it came to fruition [*i.e.*, where the accident occurred] is purely fortuitous." *See id.* at 740. But this language merely supports the proposition that the law of the jurisdiction where a manufacturing or

13

design defect caused an accident should not automatically govern. This Court agrees and does not hold that Virginia law applies merely because the accident occurred in Virginia.

- In *Flack*, the Court applied California law at Step Three because applying the law of the foreign jurisdiction where the injury occurred would not have impaired any interest of that jurisdiction in creating a business-friendly environment for foreign businesses. *See Flack*, 2019 WL 1596652, at *5. That is not the case here. Further, in *Flack*, applying the law of the foreign jurisdiction would have resulted in a stay or dismissal of the case, thereby completely eliminating California's interest in regulating manufacturing that occurs within California. *See id.* at *4. Here, however, even if Virginia law applies, the lawsuit will continue, thereby preserving California's interest in regulating Tesla's conduct.

At the September 5 hearing, Plaintiffs also pointed to the California Court of Appeals' second decision in *Chen* as supporting the proposition that comparative impairment weighs in favor of applying California law. However, that decision actually supports application of Virginia law at Step Three in this case. The *Chen* court held that any impairment to California's interest would be minimal, given that the accident in question did not occur in California, and no California resident was injured. *See Chen*, 42 Cal. App. 5th at 502-03. In contrast, the foreign state's interest in fostering a business-friendly environment would have been significantly impaired by the application of California's strict-liability regime. *See id.* at 502. The same is true here—the car accident did not occur in California, no California residents were injured and imposition of strict liability would significantly impair Virginia's interest in serving as a business-friendly jurisdiction. Plaintiffs attempt to cabin a state's interest in creating a business-friendly environment to only resident businesses because the manufacturer in *Chen* was located in the foreign state. *See Chen*, 42 Cal. App. 5th at 493, 497. But as the California Supreme Court explained in *McCann*, "[a] state [also] has a legitimate interest in attracting out-of-state companies to do business within the state." *McCann*, 48 Cal. 4th at 91.

\* \* \*

In sum, under California's choice-of-law test, the Court must apply Virginia law on the issues of negligence, contributory negligence and capping punitive damages.

### C. The Court Will Not Broadly Apply Virginia Law To All Products-Liability Issues In This Case

At the September 5 hearing, Tesla argued that, based on the California Court of Appeals' two decisions in *Chen*, the Court's choice-of-law analysis could properly yield application of Virginia law to all issues concerning products liability in this case without violating the principle that the Court must perform a separate analysis for each issue. The Court disagrees.

In its initial decision in *Chen*, the California Court of Appeals expressly explained that the analysis requires an issue-by-issue inquiry:

> We stress that the first element requires looking at the law of the potentially affected jurisdictions "with regard to the particular issue in question." California follows the doctrine of dépeçage, under which different states' laws can be applied to different issues in the case. Thus, the issue in this case is not whether California and Indiana laws are different in the abstract, but whether they are different with respect to the particular issues disputed in the case. A different governmental interest analysis must be performed with respect to each particular issue.

*Chen v. L.A. Truck Ctrs., LLC*, 7 Cal. App. 5th 757, 767 (2d Dist. Div. 8 2017) (citations omitted). Consistent with that the principle, the court did not perform a choice-of-law analysis to select a particular state's law as governing all products-liability issues but instead performed an analysis with respect to only the issue of whether California's strict-liability regime or Indiana's reasonable-care standard applied. *See id.* at 770-75; *Chen*, 42 Cal. App. 5th at 495-503. To be sure, in its initial decision, the *Chen* court did conclude that, in light of its choice-of-law analysis, "the matter [was to be] remanded for a new trial governed by California products liability law." *See Chen*, 7 Cal. App. 5th at 777 (emphasis added). But a close reading of the decision confirms that the court's use of the general term "products liability law" referred only to California's strict-liability regime. *See id.* at 770 ("While the parties identified seven different areas in which California and Indiana law differed, there was only one which determined the defense verdict in this case: strict products liability. . . . The first question is whether the laws of the two jurisdictions differ. As noted above, Indiana law does not permit a plaintiff to recover for a defectively designed product unless the seller failed to exercise reasonable care in designing the product. This is in marked contrast to California, as California law allows recovery for a

15

defectively designed product even if the defendant used reasonable care." (citation omitted)).

Accordingly, the Court declines Tesla's request to apply Virginia law to all products-liability issues in this case.[7]

## IV. CONCLUSION

For the foregoing reasons, the Court resolves the choice-of-law issues presented by Tesla as follows:

- Tesla's request to exclude Dr. Fratto's testimony under Virginia law is **DENIED**.
- Tesla's request to apply Virginia's negligence regime is **GRANTED**.
- Tesla's request to apply Virginia's contributory-negligence rule is **GRANTED**.
- Tesla's request to apply Virginia's $350,000 cap on punitive damages is **GRANTED**.
- Tesla's request to broadly apply Virginia law to every substantive issue in this action is **DENIED**.

**SO ORDERED.**

Dated: September 11, 2024

_____
SUSAN VAN KEULEN
United States Magistrate Judge

---

[7] The Court reminds the Parties that, pursuant to Section III.K of the undersigned's Civil Pretrial Standing Order, they "must provide a statement identifying any motions or other matters that must be resolved prior to trial" in their joint pretrial statement, which they must submit at least 14 days before the pretrial conference.